1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

| | |
|---|---|
| United States of America,       ) | No.  CV-24-00299-PHX-SPL (ASB) |
|                 Respondent/Plaintiff,   ) | (No.  CR-22-01604-PHX-SPL) |
|                  ) | |
| v.                      ) | **REPORT AND RECOMMENDATION** |
|                  ) | |
| Tim Wayne Fox,          ) | |
|                 ) | |
|              Movant/Defendant.    ) | |
| _____ ) | |

9
10
11
12
13
14
15
16

**TO THE HONORABLE STEVEN P. LOGAN, UNITED STATES DISTRICT JUDGE:**

17

Movant Tim Wayne Fox, who is currently serving a five-year term of supervised

18

release, has filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person

19

in Federal Custody pursuant to 28 U.S.C. § 2255. (CVDoc. 1).[1]

20

**BACKGROUND**

21

In November 2022, Movant was charged via Criminal Complaint with one count

22

of Failure to Register as a Sex Offender, in violation of 18 U.S.C. § 2250(a).  (CRDoc.

23

1.)  He was arrested and ordered detained.  (CRDocs. 7, 10, 12.)  He was first represented

24

by retained counsel Andrew Blischak.  (CRDoc. 4.)   After Movant informed Mr.

25

Blischak that he no longer wanted to be represented by him, Mr. Blischak withdrew, and

26

Movant retained Todd Romero and Eleni Perdikakis of Suzuki Law Offices.  (CRDocs.

27
28

[1]      Documents filed in CV-24-00299-PHX-SPL (ASB) will be referred to as "CVDoc." while documents filed in the related criminal action, CR-22-1604-PHX-SPL, will be referred to as "CRDoc."

11, 14-16.)

After retaining Mr. Romero, Movant unsuccessfully appealed his order of detention. (CRDoc. 27.) In December 2022, a federal grand jury indicted Movant on two counts of 18 U.S.C. § 2250(a). (CRDoc. 23.)

In January 2023, the Suzuki Law Offices' motion to withdraw as Movant's counsel was granted, and Loyd Tate from the Criminal Justice Act ("CJA") panel was appointed to represent Movant. (CRDocs. 36-37.) Movant was arraigned and trial was set. (CRDoc. 38.)

In April 2023, Mr. Tate filed a motion to determine counsel. (CRDoc. 47.) A hearing on the motion was held before the District Judge, during which the Court engaged in discussion with Movant and counsel in a sealed, *ex parte* fashion. (CRDoc. 49.) After hearing from the parties and counsel, the Court denied the motion as moot. (*Id.*, *see* CRDoc. 51 at 2-20.) The Court further observed Defendant had indicated his first two lawyers (who had been retained) reportedly "failed to notify their client about potential resolution of the case," which may have been "part of the frustration." (CRDoc. 51 at 22.)

On May 15, 2023, the District Judge convened a status hearing in the criminal matter. Another *ex parte*, sealed discussion occurred between the Court, Movant, and Mr. Tate. (CRDoc 52.) Following that discussion, the Court granted Mr. Tate's motion to withdraw and appointed CJA counsel Philip Seplow to represent Movant. (*Id.*)

The next status hearing occurred on May 30, 2023. (CRDoc. 55.) At the hearing, the Court denied as moot two filings by Movant because he filed them *pro se* when he was represented by counsel. (*Id.*) The Court's docket entries for those two filings reference General Order 21-19 of this Court. (*See* Docs. 53-54.) That General Order states that "documents filed directly with the Court by represented defendants have no legal effect under the Court's local rules (see LRCrim 57.14, LRCiv 83.3(e))" and are "nondispositive." General Order 21-19.

During that May 30, 2023 hearing, the Court asked Movant why Movant filed the

two documents when he was represented by counsel.  (CRDoc. 58 at 2-3.)  Movant responded, "I hadn't seen anybody out there and so I had the documents and I filed them."  (*Id*. at 3.)  Movant clarified that Mr. Seplow had not yet visited Movant at the custodial facility; therefore, Movant filed the documents.  (*Id*.)  Movant continued that one of his filings "was to go pro se, but then [Mr. Seplow] showed up, so –"  (*Id*.)  The Court acknowledged that one of the filings was Movant's notice of appearance (*pro se*) and the other was a motion to dismiss for lack of jurisdiction.  (*Id*.)  The Court asked Movant if he was moving to withdraw the documents because he had counsel assigned, and after further discussion with Movant and Mr. Seplow, the Court was informed that Mr. Seplow would review the contents of the two filings and determine how to proceed.  (*Id*. at 3-4.)  The Court stated, "I tell you what I plan to do, you are represented by counsel, Mr. Fox.  Document number 53 will be denied as moot, and document number 54 will also be denied as moot because you have a lawyer that's responsible for representing you.  If you have something that you need to bring to his attention that the two of you or you believe or he believes needs to be filed with this Court, he knows the proper way to file the documents."  (*Id*. at 4-5.)  The Court then informed Movant what questions it would ask Movant if Movant were to decide he wanted "to go forward and represent" himself.  (*Id*. at 5-6.)  The Court explained to Movant that it was informing him of those questions because Movant had articulated, more than once, that he had not been satisfied with the representation he was receiving.  (*Id*. at 6.)  The Court noted Mr. Seplow's many years practicing law and explained to Movant that his counsel was responsible for representing Movant (and no one else, such as family members) in Movant's case.  (*Id*.)  The Court acknowledged that Movant had "family members conducting the research and providing [Movant] with information" on certain legal theories.  (*Id*. at 10-11.)  The Court continued, "You [Movant] need to focus on what your lawyer is telling you.  Your lawyer has the law degree.  Your lawyer has the Bar card.  Unless you have a family member that has graduated from an ABA law school that has sat for and taken a bar and passed, you may be better off listening to your lawyer.  Do

you understand that, sir?"  (*Id.* at 11.)  The Movant answered, "Yes, sir."  (*Id.*)  The Court replied, "If you disagree with that and at some point you want to revisit the self-representation, we will bring you back into this courtroom."  (*Id.*)  The Court invited Movant to ask any questions he had.  (*Id.*)  Movant stated, "Your Honor, I just wanted to say that Mr. Seplow is the only person that has actually shown me a plea.  It was mentioned to me by Mr. Tate, but Mr. Seplow is the only one who has given it to me that I could actually read what it says."  (*Id.*)  The Court responded by concluding, in part: "I am very, very glad to hear that you and Mr. Seplow have met in the middle, and you are working together nicely so we can find a way to resolve this matter.  Because you have been locked up for a long time already, and we are just now providing you with a firm trial date."  (*Id.*)  A firm trial date in September 2023 was provided.  (CRDoc. 55.)

In August 2023, Movant filed a motion for release from custody and entered a plea of guilty to Count 1 of the Indictment at a hearing in front of the District Judge.  (CRDocs. 59, 62.)  At his change of plea hearing, the Court asked Mr. Seplow to lay a foundation as to how the plea agreement was conveyed to Movant.  (CRDoc. 94 at 3.)  Mr. Seplow stated, "This is a plea agreement that just didn't happen overnight, Your Honor.  There were probably four or five machinations, and every time I had either a suggestion or a template for a plea agreement, I took it to CoreCivic.  There were at least six visits there.  We went over them, and this very last one, we sat there, he read it all by himself.  I usually read to my clients, but he didn't need me to read.  And we went over each paragraph.  After that, he signed it, I signed it."  (*Id.*)  During the hearing, Movant stated, in his words and in response to questions by the Court, what he did to commit the crime to which he was pleading guilty.  (*Id.* at 13-18.)  The Court asked Movant if Movant was satisfied with the representation that Mr. Seplow had provided.  (*Id.* at 19-20.)  Movant responded, "Absolutely, I would use him again."  (*Id.* at 20.)  The Court heard argument by Mr. Seplow on the motion for release, and the Government took no position on the issue.  (*Id.* at 23-27.)  The motion for release was taken under advisement.  (*Id.* at 27.)

In a written ruling, the Court applied 18 U.S.C. § 3143 and denied the motion for release. (CRDoc. 65.)  Shortly thereafter, Mr. Seplow filed a motion for reconsideration and a motion to accelerate sentencing. (CRDocs. 66, 69.)  The Court denied both motions. (CRDocs. 68, 70.)  In denying the latter motion, the Court noted the denial was without prejudice. (CRDoc. 70.)

In September 2023, Mr. Seplow filed a second motion to accelerate sentencing. (CRDoc. 73.)  The motion was denied in October 2023. (CRDoc. 76.)  Mr. Seplow objected to the presentence investigation report and filed two sentencing memoranda. (CRDocs. 67, 72, 78.)

On October 23, 2023, Movant was sentenced pursuant to his guilty plea. (CRDocs. 79, 80, 86.)  First, the Court heard argument on Movant's objections. (*See* CRDoc. 86 at 2-9.)  The Court heard that all but two of Movant's objections were resolved during the process of finalizing the presentence investigation report. (*Id.* at 8-9.) Mr. Seplow indicated he was able to successfully have his objection regarding Movant's sexual offender tier favorably resolved in that process. (*Id.*)  The Court overruled the other defense objections, which dealt with calculation of Movant's criminal history category under the United States Sentencing Guidelines. (*See id.* at 2-9.)  After hearing Movant's allocution, the Court asked Movant if Mr. Seplow had "done a good job helping" Movant. (*Id.* at 14.)  Movant answered, "Phil has done a good job helping me. He's a caring – I can tell he cares about his client, and he pours his heart out and he wears it on his sleeve." (*Id.*)  The Government requested a 13-month sentence, and the Court sentenced Movant to time served, which was approximately 347 days. (*Id.* at 19-20.) The Court imposed a $4,000.00 fine and a $100.00 special assessment. (*Id.* at 20.)  The Court placed Movant on supervised release for a period of five years. (*Id.*)  The Court reviewed with the Movant the conditions of his supervised release before finding Movant had waived his right to appeal or collaterally attack the judgment and sentence, except for ineffective assistance of counsel or prosecutorial misconduct grounds. (*Id.* at 21-28.)

In November 2023, Mr. Seplow moved to withdraw as Movant's counsel "[a]s a

1  result of [Movant]'s wife filing a bar complaint against" him.  (CRDoc. 84.)  The motion
2  was granted.  (CRDoc. 85.)

3      On February 12, 2024, Movant filed the instant Motion to Vacate, Set Aside or
4  Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, alleging
5  four grounds for relief.  (CVDoc. 1, CRDoc. 87.)  Respondent responded to the Motion in
6  March 2024, before being ordered to do so.  (CVDoc. 4.)  Movant filed a Reply.
7  (CVDoc. 5.)  In an Order filed April 18, 2024, the District Judge considered the Motion
8  and summarily dismissed Grounds Two through Four of the Motion.  (CVDoc. 6.)  The
9  matter was referred to undersigned for a Report and Recommendation.  (*Id.* at 7.)

10                         **DISCUSSION**

11     Under 28 U.S.C. § 2255, a person "in custody" may "move the court which
12  imposed the sentence to vacate, set aside or correct the sentence" on the grounds that "the
13  sentence was imposed in violation of the Constitution or laws of the United States, or that
14  the court was without jurisdiction to impose such sentence, or that the sentence was in
15  excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28
16  U.S.C. § 2255(a).  A person who is on supervised release is "in custody" and may
17  therefore bring a timely motion under § 2255.  *Matus-Leva v. United States*, 287 F.3d
18  758, 761 (9th Cir. 2002) (quoting *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963)).
19  Movant's Motion was filed within a year from the date of judgment and his Motion is
20  timely.  *See* 28 U.S.C. § 2255(f).

21     Of the four grounds originally contained in his Motion, the remaining ground
22  alleged by Movant is that Movant received ineffective assistance of counsel and was
23  denied his right to represent himself.  (*See* CVDoc. 1 at 4, 17-19 and CVDoc. 6.)  Thus,
24  Movant argues that his plea was involuntary.

25  **I.    Legal Standard**

26     "It goes without saying that a plea must be voluntary to be constitutional."  *United*
27  *States v. Kaczynski*, 239 F.3d 1108, 1114 (9th Cir. 2001).  "A plea is voluntary if it
28  'represents a voluntary and intelligent choice among the alternative courses of action

open to a defendant.'"  *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). To determine voluntariness, courts "examine the totality of the circumstances."  *Id.* (citing *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986)).  Courts "attach substantial weight to contemporaneous on-the-record statements in assessing the voluntariness of pleas."  *United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991) (citing *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986)).

### A. Self-Representation

Under the Sixth Amendment, a criminal defendant has the right to represent himself.  *Faretta v. California*, 422 U.S. 806 (1975).  "[T]he erroneous denial of a *Faretta* request renders a guilty plea involuntary."  *Kaczynski*, 239 F.3d at 1116 (citing *United States v. Hernandez*, 203 F.3d 614, 626-27 (9th Cir. 2000) (*Hernandez* overruled on other grounds by *Indiana v. Edwards*, 554 U.S. 164 (2008)).  However, a demand to represent oneself must be unequivocal.  *United States v. Kennedy*, 564 F.2d 1329, 1340 (9th Cir. 1977) (citing *Meeks v. Craven*, 482 F.2d 465 (9th Cir. 1973)).  To make an unequivocal request, "[a] defendant must make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself."  *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989). "Once a defendant makes an unequivocal request to proceed pro se, the court must hold a hearing – commonly known as a *Faretta* hearing – to determine whether the defendant is knowingly and intelligently forgoing his right to appointed counsel."  *United States v. Farias*, 618 F.3d 1049, 1051-52 (9th Cir. 2010) (citing *United States v. Mendez-Sanchez*, 563 F.3d 935, 945 (9th Cir. 2009)).  A trial judge's responses to a defendant's statements regarding self-representation may provide indicia of whether the judge recognized an invocation of the right to self-representation.  *See id.* at 1052 (citing *Hernandez*, 203 F.3d at 621).  Requiring that a defendant's request to represent himself be unequivocal is imperative "[b]ecause a defendant normally gives up more than he gains when he elects self-representation" and because "[i]t prevents a defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-

7

1  representation." *See Adams*, 875 F.2d at 1444.

2  **B. Ineffective Assistance of Counsel**

3  "Where, as here, a defendant is represented by counsel during the plea process and

4  enters his plea upon the advice of counsel, the voluntariness of the plea depends on

5  whether counsel's advice 'was within the range of competence demanded of attorneys in

6  criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (quoting *McMann v.

7  Richardson*, 397 U.S. 759, 771 (1970)).

8  The Court reviews claims of ineffective assistance of counsel under the two-part

9  test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland,* Movant

10  must show: (1) that counsel's performance was deficient, and (2) that counsel's deficient

11  performance prejudiced the defense. 466 U.S. at 687.

12  To establish that counsel's performance was deficient, Movant must show that

13  "counsel's representation fell below an objective standard of reasonableness."

14  *Strickland*, 466 U.S. at 688. There is a strong presumption that counsel's conduct falls

15  within the wide range of reasonable assistance. *Id.* "A fair assessment of attorney

16  performance requires that every effort be made to eliminate the distorting effects of

17  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

18  evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

19  To establish prejudice from counsel's errors, Movant must demonstrate that "there

20  is a reasonable probability that, but for counsel's unprofessional errors, the result of the

21  proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable

22  probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*

23  The court need not determine whether counsel's performance was deficient before

24  examining whether prejudice resulted from the alleged deficiencies. *See Smith v.

25  Robbins*, 528 U.S. 259, 286 n.14 (2000). "If it is easier to dispose of an ineffectiveness

26  claim on the ground of lack of sufficient prejudice, which we expect will often be so, that

27  course should be followed." *Id.* (quoting *Strickland*, 466 U.S. at 697).

28

## II.   Analysis

In Ground One, Movant argues that his counsel was ineffective, as "evidenced by a revolving door of attorneys, each terminating their representation under acrimonious circumstances," which "impeded [Movant]'s ability to mount a coherent defense" and "also infringed his right to represent himself." (CVDoc. 1 at 17.) He contends that he was "coerced into a plea agreement [] without the full capacity to weigh his legal options independently or through effective counsel," and thus he was "essentially stripped [] of the agency that the Sixth Amendment seeks to protect." (*Id.* at 18.) He claims his "ability to understand the nuances of his case, to present a defense that reflected his perspective, and [] to make decisions that were in his best interests" were impacted, and therefore he was subjected to "coercion or inadequate counsel." (*Id.*) Aside from these broad assertions, Movant's only specific allegation is that the Court refused "to acknowledge and accept [his] pro se motions and his request to represent himself." (*Id.* at 17.) Movant argues that the Court's denial of self-representation "forced [Movant] into a corner where his pleas and legal strategies were filtered through a lens of counsel, he neither trusted nor agreed with," which is "contrary to the spirit of *Faretta*." (*Id.*) In his Reply, Movant further contends that his "counsel's failure to adequately discuss the implications of the waiver [of his right to file a § 2255 motion] and to vigorously advocate on his behalf during the plea negotiations constitutes a deficiency under *Strickland*." (CVDoc. 5 at 7.)

To ensure a clear record, undersigned will consider first the self-representation argument, as that seems to be Movant's primary contention. Second, undersigned will analyze the ineffective assistance of counsel claim.

### A.  Self-Representation

A review of the record, when considered in its totality, shows Movant made no unequivocal invocation of his right to self-representation. First, Movant was represented by two, successive attorneys of his own choosing, whom he retained. When Movant was represented by his first court-appointed counsel, that attorney (Mr. Tate) filed a motion to

determine counsel, which was denied as moot by the Court following an *ex parte* discussion with Movant and Mr. Tate.  At a subsequent hearing, Mr. Tate orally moved to withdraw, and the motion was granted.  Movant's second court-appointed attorney, Mr. Seplow, was appointed to represent Movant on May 15, 2023.  On May 18 and 22, 2023, respectively, Movant filed two documents *pro se* while he was represented by Mr. Seplow.  The Court acknowledged those filings and proceeded to ask questions that showed its efforts to determine whether Movant was actually invoking his right to represent himself (and whether the invocation of self-representation was unequivocal). (*See* CRDoc. 58 at 2-12.)  Movant's responses to the Court's questions indicated that Movant filed those documents <u>before</u> Mr. Seplow had had the chance to meet with Movant. (*See id.* at 3.)  Specifically, Movant stated that one document "was to go pro se, but then he (Mr. Seplow) showed up."  (*Id.*)  When asked directly whether he was withdrawing his two filings, Movant did not answer the question.  (*See id.*)  Instead, the discussion turned to the number of documents filed and whether other documents Movant referenced had been included in one of the documents that was filed. (*See id.*)  After Mr. Seplow informed the Court that he would be reviewing Movant's filings and raising their contents as appropriate in the future, the Court told Movant that it would deny his filings as moot.  (*Id.* at 4-5.)  That denial was proper pursuant to LRCiv 83.3(c)(2), which bars a party from filing documents on his own behalf when represented by counsel.[2]  Indeed, the Court's minute entries for both documents referenced General Order 21-19, which states such documents "have no legal effect under the Court's local rules (see LRCrim 57.14, LRCiv 83.3(e))" and are "nondispositive."  General Order 21-19.

After the denial, the Court immediately advised Movant that if Movant believed there was something he needed to bring to the Court's attention in the future, Movant

---

[2] LRCrim 57.14, which applies to criminal proceedings, refers the reader to LRCiv 83.3.  LRCiv 83.3(c)(2), in turn, directs that "[w]henever a party has appeared by attorney, that party cannot thereafter appear or act in that party's own behalf in the cause, or take any steps therein, unless an order of substitution shall first have been made by the Court after notice to the attorney of each such party, and to the opposite party."  Further, no attorney may be withdrawn without leave of Court.  LRCiv 83.3(b).

could file that through his lawyer in the proper manner.  (CRDoc. 58 at 5.)  The Court continued, "Also, just to make sure that you understand that if we come back to court and you have changed your mind again and you have decided that you want to go forward and represent yourself, just to make sure we have a record of what questions I will be asking you."  (*Id.*)  The Court went on to list questions in the *Faretta* colloquy.  (*Id.* at 5-6.)

The language used by the Court is significant, because it demonstrates that the Court was advising Movant of what questions Movant could expect to be asked if, in the future, Movant "changed his mind again" and invoked his right to self-representation.  Thus, the Court's language indicates the Court did not recognize any unequivocal invocation of the right to self-representation.  *See Farias*, 618 F.3d at 1052 (citing *Hernandez*, 203 F.3d at 621).   At no time during that hearing did Movant invoke that right.  (*See* CRDoc. 58.)  Indeed, rather than denying Movant his right, the Court invited Movant to raise the issue again if, after having the benefit of his newly-appointed and very experienced counsel review his filings and discussing the issues contained therein, Movant believed that course of action to be appropriate.  (*See id.*)  The Court did this not only before listing *Faretta* questions it would ask Movant if Movant raised the issue in the future, but near the end of the same hearing.  (*See id.* at 5-6, 11-12.)  Specifically, the Court encouraged Movant to listen to counsel and benefit from his advice, and the Court concluded, "If you disagree with that and at some point you want to revisit the self-representation, we will bring you back into this courtroom – and Mr. Seplow, I am certainly not advocating as it relates to your position and representation, but make sure he understands Faretta and the Sixth Amendment, can you do that?"  (*Id.* at 11.)  After Mr. Seplow said he would do so, the Court turned to Movant and asked Movant this broad question: "Mr. Fox, do you have any questions about anything that has happened in your case?"  (*Id.*)  At this juncture, had Movant wanted to do so, he could have asked the Court any number of questions, including for clarification on how he could represent himself.  Movant did nothing of the sort.  Instead, Movant responded, "Your Honor, I just

wanted to say that Mr. Seplow is the only person that has actually shown me a plea. It was mentioned to me by Mr. Tate, but Mr. Seplow is the only one who has given it to me that I could actually read what it says." (*Id.*) Therefore, instead of indicating he wanted to represent himself, Movant spoke positively of Mr. Seplow. (*See id.*) Certainly, Movant could have raised the issue of self-representation in response to that question from the Court. He elected not to do so.

Similarly, Movant chose not to raise the issue of self-representation at any subsequent hearing before the Court, and he chose not to raise it in any subsequent filing. The record is devoid of any evidence whatsoever that Movant requested Mr. Seplow file a motion to determine counsel or a motion to withdraw. To be sure, Movant's instant Motion and Reply make no such allegation. Furthermore, at each hearing that followed the May 30, 2023 hearing, Movant praised Mr. Seplow. At his change of plea hearing, the Court asked Movant whether Movant was pleased with the work Mr. Seplow had done for him. Movant responded, while under oath, "Absolutely, I would use him again." (CRDoc. 94 at 20.) At sentencing, in response to a similar question from the Court, Movant stated, "Phil has done a good job representing me. He's a caring – I can tell he cares about his client, and he pours his heart out and he wears it on his sleeve." (CRDoc. 86 at 14.) At no time during either hearing did Movant make any indication whatsoever that he wished to represent himself. (*See* CRDocs. 86, 94.)

It also bears noting that at his change of plea hearing, Movant was asked a series of questions related to voluntariness. None of his responses to any of those questions indicates his plea was involuntary. Specifically, Movant was asked:

> THE COURT: Did anyone force, threaten, or coerce you into entering into this plea agreement?
> [MOVANT]: No, sir.
> THE COURT: Did anyone make you any promises to get you to enter into this plea agreement, other than the promises that are contained in your plea agreement?
> [MOVANT]: No, sir.
> THE COURT: Sir, are you pleading guilty voluntarily because you believe

1  you're guilty of this crime?
2  [MOVANT]:  Yes, sir.

(CRDoc. 86 at 6.)   The statements by Movant are given "substantial weight" under the case law.  *See Mims*, 928 F.2d at 313.

During the hearing, the Court also asked Movant whether Movant had reviewed the Sentencing Guidelines and the elements of the crime with Mr. Seplow.  (*See id.* at 7, 13.)  Movant confirmed that he had.  (*See id.*)  After Movant laid the factual basis for his crime in his own words, Movant confirmed that the written factual basis in the plea agreement was accurate.  (*See id.* at 13-18.)  Mr. Seplow stated that he and Movant, along with the prosecutor and Mr. Seplow's paralegal, went over the factual basis together "many, many times."  (*Id.* at 18.)  After stating he was satisfied with Mr. Seplow's representation, Movant answered "Yes, your Honor" after being asked whether he wanted to enter a plea of guilty and waive his right to a trial.  (*Id.* at 20.)  After considering all of Movant's statements under oath, the Court found Movant's guilty plea to be knowing, intelligent, and voluntary, and the Court accepted the guilty plea.  (*Id.* at 20-21.)

After carefully considering the entirety of the record before it, the Court cannot locate any instance of Movant's right to self-representation being infringed.  Nor can the Court locate any unequivocal invocation of Movant's right to self-representation, after considering "the totality of the circumstances" and all of the events in his criminal case in their full context.  *See Kaczynski*, 239 F.3d at 1114.  After Movant improperly filed two documents, which Movant clarified were filed when he had not yet met his fourth attorney (Mr. Seplow), the Court invited Movant to raise the issue of self-representation if he wished to do so.  Movant chose not to, and instead, repeatedly expressed his satisfaction with Mr. Seplow at every opportunity.   The record simply does not support Movant's assertion that he was denied his Sixth Amendment right to represent himself.  Consequently, undersigned will recommend that this basis for Ground One be denied.

**B.  Ineffective Assistance of Counsel**

13

Under the controlling case law, mere conclusory allegations are insufficient to prove that counsel was ineffective. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989). Movant bears the burden to show that counsel's conduct fell below an objective standard of reasonableness and, but for his counsel's errors, the result of the proceeding would have been different.  Here, Movant has done neither.

Although Movant has made some sweeping statements in his filings (CV Docs. 1, 5) and invoked *Strickland* (*see, e.g.,* CVDoc. 5 at 7), Movant has failed to show his counsel's representation fell below an objective standard of reasonableness. Movant alleges "counsel's failure to adequately discuss the implications of the waiver [of his right to file a § 2255 motion] and to vigorously advocate on his behalf during the plea negotiations constitutes a deficiency under *Strickland*." (*Id.*) Movant, however, provides no support for any of his conclusory allegations. (*See* CVDocs. 1, 5.)

The Court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. *See Smith v. Robbins*, 528 U.S. at 286 n.14.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* (quoting *Strickland*, 466 U.S. at 697).   To show prejudice, Movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Undersigned finds that Movant has failed to make that showing and the ineffective assistance of counsel claim must therefore be denied.

Even assuming *arguendo* that Movant has been able to show some prejudice – which he has not – undersigned cannot identify any instance in the record where counsel's performance was deficient.  First, the plea agreement was the product of considerable negotiations between Mr. Seplow and the prosecutor.   Mr. Seplow summarized the process as follows during Movant's change of plea hearing:  "This is a plea agreement that just didn't happen overnight, Your Honor.  There were probably four or five machinations, and every time I had either a suggestion or a template for a plea

agreement, I took it to CoreCivic.  There were at least six visits there.  We went over them, and this very last one, we sat there, he read it all by himself.  I usually read to my clients, but he didn't need me to read.  And we went over each paragraph.  After that, he signed it, I signed it."  (CRDoc. 94 at 3.)  In addition, Movant's plea agreement was quite favorable to him.  *Inter alia*, Movant's plea agreement stipulated that Movant be sentenced to no more than the midpoint of the Guidelines range, and if the calculated low end of the range were twelve months' imprisonment, then the cap would be twelve months and one day.  (*See* CRDoc. 8.)  Importantly, Movant was free to request a sentence below that cap (and Movant, through counsel, did so), and the Government further agreed not to prosecute Movant for being a felon in possession of the ten firearms and three thousand-plus rounds of ammunition seized by the United States Marshals Service.  (*See id.* at 9, 19.)  Those were significant benefits to Movant.  Additionally, counsel doggedly sought Movant's release before sentencing, successfully resolved an objection in Movant's favor prior to sentencing, and argued further objections at sentencing.  Ultimately, Movant was sentenced to a term in custody that was briefer than what was sought by the Government – Movant received a sentence of time served.  Further, Movant faced a potential lifetime supervised release term but was instead ordered to spend five years on supervised release.

Finally, as noted, *supra*, every time the Court specifically asked Movant whether he was satisfied with the work Mr. Seplow had done for him, Movant indicated that he was indeed satisfied.  To be sure, at his change of plea hearing, Movant went even further and told the Court (while under oath) that he would utilize Mr. Seplow again as his counsel.  (CRDoc. 94 at 19-20.)  That is hardly the statement of someone who believes they are being ineffectively represented.  At sentencing, Movant made no indication whatsoever that his opinion had changed.  When asked about Mr. Seplow's performance, Movant stated that Mr. Seplow had done a "good job" for him and cares about his clients.  (*See* CRDoc. 86 at 14.)  Those contemporaneous statements by Movant are compelling evidence to which the case law directs "substantial weight" must be given.  *See Mims*,

928 F.2d at 313.  As the Supreme Court has observed: "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."  *Lee v. United States*, 582 U.S. 357, 369 (2017).

In sum, Movant has not met his burden to show prejudice and deficient performance under *Strickland*.   Accordingly, undersigned will recommend that Ground One be denied.

**III.    Evidentiary Hearing**

Undersigned concludes that Movant is not entitled to an evidentiary hearing on his claims because "the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b). The testimony of Movant or his counsel would add little or nothing to record before the Court. "Section 2255 itself 'recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.'" *Watts v. United States,* 841 F.2d 275, 277 (9th Cir. 1988) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). Although undersigned recognizes "that when the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive… this is one of those cases in which an issue of credibility may be conclusively decided on the basis of documentary testimony and evidence in the record." *See Watts,* 841 F.2d at 277 (internal citation and quotation marks omitted) (noting "[w]hen section 2255 motions are based on alleged occurrences entirely outside the record, which if true would support relief, the court must conduct a hearing on those allegations 'unless, viewing the petition against the record, its allegations do not state a claim for relief or are so patently frivolous or false as to warrant summary dismissal.'")  An evidentiary hearing is not required by statute.

**CONCLUSION**

For the foregoing reasons, undersigned finds that Ground One in the Motion fails on the merits.  Movant has not raised facts or issues that entitle him to an evidentiary

16

hearing. Accordingly, undersigned will recommend that the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 be denied.

**IT IS THEREFORE RECOMMENDED** that the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (CVDoc. 1) be **DENIED** and that **CV-24-00299-PHX-SPL (ASB)** be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 14th day of August, 2024.

Honorable Alison S. Bachus
United States Magistrate Judge

17